## Cleavenger, Appellant, v. Zebraskey.

Argued March 14, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused May 26, 1960.

W. *Robert Thompson,* with him *John E. Baily,* and *Thompson and Baily,* for appellant.

*Ira B. Coldren, Jr.,* with him *R. Wallace Maxwell, I. Burdette Coldren,* and *Coldren & Coldren,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, April 18, 1960:

This is an appeal from the Court of Common Pleas of Greene County which entered a judgment n.o.v. in favor of the defendants after the jury had returned a verdict for the plaintiffs in a trespass action based on an automobile collision in which the plaintiffs' decedent was killed as a result of the alleged negligence of one Walter G. Zebraskey.

To announce the rule that in reviewing the evidence in a case of this character, we are to read it in the light most advantageous to the verdict-winners seems as superfluous as declaring that we are a court of review. However, we still mention the rule in order to give completeness to the opinion and at the same time point out that a court *en banc* is equally a court of review and that, in passing upon a motion for judgment n.o.v. it must also be guided by that same rule. It would appear, however, that the court below treated the jury's verdict as mere speculation and it proceeded to re-evaluate, re-appraise, and re-decide the facts as if it were a tribunal passing initially on a controverted factual situation, which, of course, it has no right to do.

The essential facts in the case at bar are brief and not complicated. On January 6, 1958, at about 7 p.m., Fred D. Cleavenger, forty years of age, was driving his automobile, known as a British M.G. in a southwardly direction on Route 121 (the Morgantown Road), at a speed indicated to be slightly more than 50 miles per hour. At a point in Dunkard Township, Route 616 (the Taylortown Road) leads into the Morgantown Road, forming a T intersection. At the time stated, Walter G. Zebraskey, driving a Ford Sunliner convertible, was traveling in an eastward direction on the Taylortown Road, with the intention of turning left at the T intersection and proceeding northwardly on the Morgantown Road. At this point, an embankment on the left of the Taylortown Road impedes a full view of the Morgantown Road, as one would look in a northward direction. Zebraskey halted at the Stop Sign, which notified him of the through highway ahead, and then started forward just as Cleavenger came down the highway (there is a descending 5% grade along this stretch.) The inevitable and ensuing collision actually occurred on the farther side of the Morgantown Road, that is, in the northbound lane. Cleavenger sustained fatal injuries. Zebraskey escaped without a scratch.

Since the Morgantown Road is a through highway, it was Zebraskey's duty to give way to the Cleavenger car unless, of course, he was so far ahead of Cleavenger when he reached the intersection, that he could cross over in safety. Was he that far ahead to justify his proceeding forward? When Zebraskey arrived at the intersection, did he observe the rules of the highway? Did Cleavenger use due care? These and kindred questions were for the jury to decide and we cannot say, from studying the record, that they ignored the evidence and returned a verdict contrary to law.

In its opinion, the lower court said: "Under the facts in this case, assuming every inference favorable to the plaintiff, there is not one particle of proof in the evidence of negligence on the part of the defendant."

We do not know how the lower court defines "particle," but it would seem to us that if the defendant knew or should have known a car was approaching on the Morgantown Road from his left; if, knowing this, he proceeded into the highway, without looking to the left, which he was required to do in any event since, in right angularly crossing a highway the traffic normally would first be coming toward him from the left; if he was traveling at such a rate of speed that, once becoming aware of a car from his left, he was unable to stop quickly, and accordingly increased his speed in an attempt to get across first; if he did all these things, we would say that there was something more than a "particle" of proof that his headlong and heedless action constituted negligence of a particularly flagrant character.

The evidence shows he did do all these things.

The defendant may have used care in approaching the fateful intersection, but considerably more than that care is required to exculpate him from the negligence which the jury found against him. Zebraskey did halt at the Stop Sign which flagged traffic about to enter the Morgantown Road, but he apparently did this more in token recognition of the rule of the highway than in conscientious appreciation of the significance of stopping because, after stopping, he then shot ahead, thus cancelling out the caution which the stopping is intended to induce.

David Adams, who was on the Morgantown Road travelling northwardly when the accident occurred, testified: "I noticed a black Ford at the intersection at a complete stop, and I noticed as he started oozing out

slowly, and he started *shooting out,* and I saw lights coming about the same time." (Emphasis supplied.)

Adams said further: "He was pulling out of the intersection slowly, and then about the time he met these lights, about the time I noticed them, he started *shooting across."* (Emphasis supplied.)

Although the darkness of a January night had already enveloped the crucial area, Zebraskey knew of Cleavenger's presence on the Morgantown Road because, while momentarily halted at the Stop Sign he had seen the reflections of Cleavenger's car at the crest of the road (425 feet north from the intersection). Several days after the accident, Zebraskey recalled the prologue to the tragedy as follows: "I came up to entrance and stopped at stop sign, I saw reflections of Cleavenger's lights over crest of hill on my left. Then I looked to my right, then I proceeded out into the intersection."

Thus, being informed of Cleavenger's presence on the highway, Zebraskey should have been on his guard as he was about to enter the Morgantown Road. On the contrary, after catching sight of Cleavenger's lights at the crest of the hill on his left, he went forward without looking to his left again until he had entered the through highway,—and the disaster was about to occur. Whether, at this juncture, he might not still have averted the collision by turning to the right on the Morgantown Road instead of crossing it at right angles in front of Cleavenger's car was a question for the jury to decide, which did decide that, regardless of hypothetical avenues of escape, it was Zebraskey's initial fault which set off the train of events culminating in Cleavenger's death. Incidentally, the mouth of the Taylortown Road, as it debouches into Morgantown Road, is very wide and would allow for considerable maneuverability of cars.

The lower court says: "There is nothing to substantiate a finding that the defendant entered the through highway and crossed the decedent's path when he should have known it was not safe to do so."

Instead of "nothing," the record, in fact, shows a great deal to substantiate the finding that the defendant entered the through highway and crossed the decedent's path when he should have known it was unsafe to do so. Mrs. Buehl Stewart, who arrived at the scene of the accident shortly after it occurred, testified that Zebraskey admitted that he: "drove out on the road there and he just got it on the road and he seen them lights coming, and he tried to make it across the road, he thought he would miss him."

Another witness, Curtis H. Jones, testified that Zebraskey admitted that he: "drove up to the intersection and stopped and started to pull out and he saw these lights bearing down on him as he started to cross the intersection, and he tried to get on across, but he couldn't make it."

A motorist entering a through highway from a subsidiary road should proceed with the caution of one advancing over a frozen body of water, being ready and prepared to stop or retreat upon the slightest warning of a cracking of the ice. Zebraskey received his warning—the cracking of the ice—when he saw the reflection of the Cleavenger car at the crest of the hill. He knew that as he approached the Morgantown Road the embankment on the Taylortown Road would shut off an immediate view of the intersection. He should, under those circumstances, have slowly moved to the edge of the through highway and there have taken his bearings by at once looking to the left because obviously the first lane he was to cross would carry traffic from the left. This, he utterly failed to do, and, instead, without sounding any warning, he shot out into the highway to become a heavy barrier against which

Cleavenger was to strike, to his serious injury and death. The jury found that Zebraskey's failure to observe the rules of the road, and his disregard of the laws of safety for others, constituted negligence. The record amply justifies that finding.

The lower court, after exculpating the defendant from the charge of negligence, then declared that Cleavenger was guilty of contributory negligence, saying: "The decedent's unexplained presence in the wrong lane of traffic is prima facie evidence of negligence."

But his presence in that lane was not unexplained. The explanation of his being there was found written in the highway in the skid marks which spoke with a pathetic eloquence of Cleavenger's attempt to avoid hitting the barrier which suddenly appeared in his path. Photographs introduced in evidence, supported by oral testimony, reveal tire burns in the pavement for a distance of 45 feet beginning on Cleavenger's side of the road in the direction in which he was traveling and ending in the northbound lane of the road, where the collision occurred.

When Cleavenger threw on his brakes he was on his proper side of the road. It is apparent from the tire marks that the application of the brakes caused the left front wheel to lock, since this wheel dragged, cutting deeply into the pavement for 15 feet and then moving over the center lane in an arc for another 30 feet.

The jury undoubtedly found from these marks, in addition to the testimony presented by David Adams, that Cleavenger jammed his brakes hard when Zebraskey shot out in front of him, and that when he (Cleavenger) saw that the distance between the two vehicles was too brief for his car to stop short of a physical encounter with the Ford car, he then attempted to avoid striking it by cutting to the left. Since Zebraskey still continued straight across the Morgantown Road and thus still remained in front of Cleaven-

ger, the actual impact occurred in the northbound lane of the highway.

The jury was justified in finding, under all these circumstances, plus the presumption that the decedent Cleavenger used due care, that there was no contributory negligence in the case.

The record gives no support to the trial court's conclusion that Cleavenger was guilty as a matter of law of contributory negligence and it refutes the court's conclusion that Zebraskey was free of negligence.

Judgment reversed and record remanded for disposition of the defendants' pending motion for a new trial. If a new trial is refused the court below will forthwith enter judgment for the plaintiff on the verdict.